UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VALADA STRAKER,

     Plaintiff,

v.                                                    Case No: 8:21-cv-838-KKM-JSS

PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

The parties filed cross-motions for summary judgment. (Dkts. 26, 28.) The undersigned held a hearing on the motions on April 26, 2022. Upon consideration and for the reasons that follow, the undersigned recommends that Defendant's Motion for Summary Judgment (Dkt. 26) be granted and Plaintiff's Motion for Summary Judgment (Dkt. 28) be denied.

## BACKGROUND

Plaintiff worked for Macy's Inc. as a credit card customer service representative. (Dkt. 26 at 2; Dkt. 28 at 1.) Plaintiff participated in the short-term and long-term disability plans Macy's sponsored for its employees ("Plans"). (Dkt. 26 at 2; Dkt. 28 at 1–2; PRU 0019–53; PRU 0054–106.[1]) Macy's secured a group contract through

---

[1] The administrative record was filed at Docket Entry 24. The record is not independently paginated. Rather, the pages are bates stamped as "PRU 077212-002773-000XXX. The first page of the

Defendant to provide the benefits to its employees.  (Dkt. 26 at 2–3; Dkt. 28 at 2; PRU 0012.)

## A. The Plans and Definitions

Under the Plans, Defendant is both the administrator and payor of benefits. (PRU 0001–106.)  The Plans define disability to occur "when [Defendant] determines that [an employee] is unable to perform the material and substantial duties of [his or her] regular occupation due to [his or her] sickness or injury, [the employee] is under the regular care of a doctor," and the employee has a 20% or more loss in weekly (for short-term disability) or monthly (for long-term disability) earnings.  (PRU 0033; PRU 0067.)  "Material and substantial duties" are defined as duties that "are normally required for the performance of [the employee's] regular occupation" that could not be "reasonably omitted or modified."  (*Id.*)  Additionally, "regular occupation" is defined as "the occupation [the employee is] routinely performing when disability begins."  (*Id.*)  The Plans provide that Defendant will consider an employee's occupation "as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."  (*Id.*)  The Plans further provide that Defendant will assess an employee's ability to work by considering facts and opinions from doctors, medical practitioners, or vocational experts.  (*Id.*)

---

administrative record is PRU 077212-002773-000001.  (Dkt. 24-1.)  For ease of reference, the undersigned will refer only to the last four digits of the bates number, such as PRU 0001.

**B. Procedural History**

Plaintiff stopped working for Macy's on November 19, 2019 and applied for disability benefits from Defendant due to right upper extremity numbness, numbness in her face, diabetes, and hypertension. (PRU 0115–19; PRU 0161.) Defendant initially granted Plaintiff's claim for short-term disability benefits. (Dkt. 27 at 9; Dkt 28 at 2.) On June 16, 2020, Defendant notified Plaintiff that her claim for long-term disability was denied and that her short-term disability benefits would terminate effective May 1, 2020. (PRU 0746–50.) Plaintiff requested reconsideration of this decision and submitted additional medical records for consideration. (PRU 0759–63.)

While reconsidering Plaintiff's claims, Defendant obtained the medical opinion of Dr. Edward Mendoza. (PRU 0792–800.) Dr. Mendoza opined that Plaintiff had some restrictions and limitations in her ability to work due to numbness in her right hand, but had no restrictions or limitations due to hypertension, facial numbness, cervical muscle spasms, chronic kidney disease, or diabetes. (*Id.*) Based upon his evaluation, Dr. Mendoza opined that Plaintiff had carpal tunnel syndrome in her right upper extremity exacerbated by diabetes and diabetic neuropathy. (PRU 0798.) Accordingly, Dr. Mendoza opined that Plaintiff could handle, finger, grasp, grip, and pinch frequently, bilaterally. (*Id.*)

Following Dr. Mendoza's assessment, Defendant obtained a vocational evaluation from Amy Corrigan. (PRU 0808.) Ms. Corrigan classified Plaintiff's job as a customer service representative. (*Id.*) Ms. Corrigan then identified the physical

- 3 -

requirements for a customer service representative to include frequent handling and fingering.  (PRU 0809.)  Ultimately, Ms. Corrigan opined that the material and substantial job duties of a customer service representative "appear to be consistent" with Plaintiff restrictions and limitations, as identified by Dr. Mendoza.  (*Id.*) Defendant provided Plaintiff with the additional evidence gathered during reconsideration and an opportunity to respond.  (PRU 0812.)

On August 19, 2020, Defendant affirmed its denial of Plaintiff's claims.  (PRU 0864–68.)  Plaintiff appealed this decision through counsel and argued that Dr. Mendoza overstated her ability to perform work-related activities.  (PRU 0875.) Plaintiff further argued that the job of customer service representative requires constant, not frequent, fingering, as actually performed by Plaintiff and as normally performed.  (*Id.*)  In support, Plaintiff included a job description for a Macy's call center agent in Atlanta, Georgia which specified that the job required "regular" fingering, handling, and feeling.  (PRU 0884.)  Plaintiff also included a summary report for a customer service representative from the Occupation Information Network ("O*Net"), a database of occupational characteristics and work requirements.  (PRU 0878–82.)  The O*Net report indicated that 27% of persons surveyed reported that the job of customer service agent may involve making repetitive motions "continually or almost continually."  (PRU 0881.)

Based upon Plaintiff's submissions, Defendant sought further review from Ms. Corrigan.  (PRU 0894.)  Ms. Corrigan considered Plaintiff's arguments and materials,

- 4 -

as well as the O*Net report and data, and again concluded that the physical demands of a customer service representative, as it is normally performed in the national economy, was consistent with Plaintiff's restrictions and limitations. (PRU 0898–99.) Ms. Corrigan noted that the O*Net report indicated that while 27% of responses indicated repetitive motions continually or almost continually, 66% percent did not. Moreover, Ms. Corrigan noted that the particular job posting submitted by Plaintiff related to only one Macy's location and did not define the requirements as the job was normally performed in the national economy. (PRU 0899.) Defendant provided Plaintiff with this new evidence and an opportunity to respond. (PRU 0901.)

By letter dated February 11, 2021, Defendant upheld its original decision to terminate Plaintiff's short-term disability benefits and deny her claim for long-term disability benefits. (PRU 0909–13.) Thereafter, Plaintiff filed a complaint with this court seeking judicial review of Defendant's decision pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132.

## APPLICABLE STANDARDS

ERISA provides a private right of action to plan participants or beneficiaries to recover benefits due under a benefit plan. 29 U.S.C. § 1132(a)(1)(B). The district court reviewing a plan administrator's decision to deny benefits "sits more as an appellate tribunal than as a trial court." *Crume v. Metro. Life Ins. Co.*, 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006) (citation omitted). Accordingly, "the usual summary-judgment standards [do not] apply." *Whiteside v. Securian Life Ins. Co.*, No. 8:17-cv-853-T-

30AAS, 2017 WL 8897132, at *4 (M.D. Fla. Dec. 7, 2017) (citing *Blankenship v. Metro Life Ins. Co.*, 644 F.3d 1350, 1354 n.4 (11th Cir. 2011)). Rather, a motion for summary judgment "is merely the conduit to bring the legal question before the district court." *Crume*, 417 F. Supp. 2d at 1272 (citation omitted). The reviewing court asks whether the evidence reflects that the plan administrator acted arbitrarily and capriciously in denying the claim for benefits. *Lee v. Equity Properties Asset Mgmt., Inc.*, No. 8:13-cv-2239-T-30EAJ, 2015 WL 6956556, at *10 (M.D. Fla. Nov. 10, 2015).

"ERISA itself provides no standard for courts reviewing the benefits decisions of plan administrators or fiduciaries." *Blankenship*, 644 F.3d at 1354. Based upon guidance from the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) and *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), the Eleventh Circuit established the following six-step framework:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355 (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010)).  Therefore, even if the court finds that the administrator's decision was "wrong," the decision will be upheld unless it is unreasonable, "even if there is evidence that would support a contrary decision."  *Eady v. Am. Cast Iron Pipe Co.*, 203 F. App'x 326, 328 (11th Cir. 2006); *see Applegate v. Liberty Life Assur. Co. of Bos.*, No. 2:17-cv-130-FTM-99MRM, 2018 WL 4610607, at *15 (M.D. Fla. July 24, 2018), *report and recommendation adopted*, No. 2:17-cv-130-FTM-99MRM, 2018 WL 4103557 (M.D. Fla. Aug. 29, 2018).

## ANALYSIS

The parties stipulate that the Plans vested Defendant with discretion to decide claims and interpret the language of the Plans.  (Dkt. 25 at 2.)  Accordingly, the undersigned will begin the analysis at step three of the Eleventh Circuit's framework to determine whether Defendant's decision to deny benefits was arbitrary and capricious.  *Prelutsky v. Greater Georgia Life Ins. Co.*, 692 F. App'x 969, 973 (11th Cir. 2017) (beginning analysis at step three); *Martinez v. Reliance Standard Life Ins. Co.*, No. 8:20-cv-1080-KKM-AAS, 2022 WL 1314118, at *5 (M.D. Fla. Mar. 31, 2022); *Keys v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 493 F. Supp. 3d 1147, 1168 (M.D. Fla. 2020), *appeal dismissed sub nom. Keys v. Bert Bell / Pete Rozelle NFL Players Ret. Plan*, No. 20-14031-GG, 2021 WL 2252144 (11th Cir. May 11, 2021); *Kaviani v. Reliance Standard*

*Life Ins. Co.*, 373 F. Supp. 3d 1337, 1343 (M.D. Fla. 2019), *aff'd,* 799 F. App'x 753 (11th Cir. 2020); *Jones v. AT&T Umbrella Benefit Plan No. 1*, No. 3:15-cv-821-J-34JRK, 2018 WL 748870, at \*9 (M.D. Fla. Jan. 10, 2018), *report and recommendation adopted*, No. 3:15-cv-821-J-34JRK, 2018 WL 746938 (M.D. Fla. Feb. 7, 2018).

### A. Reasonableness

At step three of the sequential analysis, the court must determine whether there is a reasonable basis in the record to support Defendant's decision to deny benefits. *Eady*, 203 F. App'x at 328.  The parties have stipulated that it was not an abuse of discretion for Defendant to rely on the medical opinion of Dr. Mendoza regarding Plaintiff's functional capacity and that the only issue before the court is whether Defendant erred in relying on Ms. Corrigan's findings. (Dkt. 25 at 2.)  Plaintiff further advised in her motion that although she does not agree with Dr. Mendoza's findings, she does not challenge them before this court.  (Dkt. 28 at 7.)  Therefore, the undersigned turns to whether Defendant reasonably relied on Ms. Corrigan's opinion to determine that Plaintiff could perform the material and substantial duties of her regular occupation.

Ms. Corrigan classified Plaintiff's job as a customer service representative and Plaintiff does not challenge this classification.   Based upon her review of the Dictionary of Occupational Titles ("DOT") and O\*Net, Ms. Corrigan found that the job of customer service representative, as generally performed in the national economy, requires frequent handling and fingering, bilaterally.  (PRU 0809.)  Ms.

Corrigan also noted that although Plaintiff reported that she performed the job at a medium physical demand level, the occupation is regularly performed at the sedentary level. (*Id.*)

Dr. Mendoza opined that Plaintiff could Plaintiff could handle, finger, grasp, grip, and pinch frequently, bilaterally. (PRU 0798.)  Based on Dr. Mendoza's assessment, Ms. Corrigan concluded that Plaintiff's restrictions did not preclude her from performing the job duties of a customer service representative.  Ms. Corrigan's assessment is based upon a review of the record, O*Net, the DOT, and Dr. Mendoza's medical opinion.  As such, there is sufficient evidence in the record to find that it was reasonable for Defendant to rely on Ms. Corrigan's assessment.  *Applegate*, 2018 WL 4610607, at *16 (finding it was reasonable for a plan administrator to rely on vocational assessment based on review of the full record).

Plaintiff contends that Dr. Mendoza's opinion was not sufficiently precise to allow Ms. Corrigan to make a proper assessment as to whether Plaintiff could perform the material and substantial job duties of a customer service representative. (Dkt. 28 at 8.)  Specifically, Plaintiff explains that "frequently" means "between 1/3 and 2/3 of a workday." (*Id.*)  Plaintiff contends that it is unclear from the record whether her limitations would place her at the bottom, middle, or top of that range. (*Id.*)

As Plaintiff notes, however, "frequently" has a specific meaning in this context. Ms. Corrigan explained—and Plaintiff agrees—that when used to describe functional limitations, "frequently" is defined to occur between one-third and two-thirds of a

workday.  (PRU 0899; Dkt. 28 at 8.)  The physical requirements of a customer service agent include the ability to handle and finger frequently.  (PRU 0809.)  Dr. Mendoza opined that Plaintiff could handle and finger frequently, bilaterally.  (PRU 0798.)  Thus, it was reasonable for Defendant to conclude that Dr. Mendoza opined that Plaintiff could perform these activities between one-third and two-thirds of a workday, as required.  There is no basis in the record to presume that Dr. Mendoza actually meant that Plaintiff could perform these activities more than one-third of the day but less than two-thirds of the day, as Plaintiff implies.  Even if this interpretation of Dr. Mendoza's opinion were reasonable, the interpretation applied by Defendant, that Dr. Mendoza used the term frequently to mean one-third to two-thirds of the day, is also reasonable.  This court must affirm if Defendant's decision was reasonable, and the fact that there may be other reasonable interpretations or outcomes does not compel remand.  *See Eady*, 203 F. App'x at 328 ("As long as a reasonable basis appears for the plan administrator's decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision."); *Ferreira v. Prudential Ins. Co. of Am.*, No. 8:18-cv-524-T-30SPF, 2019 WL 501363, at *5 (M.D. Fla. Jan. 24, 2019), *report and recommendation adopted*, No. 8:18-cv-524-T-30SPF, 2019 WL 497691 (M.D. Fla. Feb. 8, 2019) ("[A] court will affirm if the administrator's decision is reasonable given the available evidence, even though the court might have made a different decision if it had been the original decision-maker.").

Next, Plaintiff argues that the job of customer service representative is very broad and that the handling and fingering requirements may differ among different industries, companies, or locations. (Dkt. 28 at 8–9.) Plaintiff contends it would be reasonable to presume that the requirements for her particular industry, store, and location may be different from the occupation as generally performed in national economy. (*Id.*).

Plaintiff's argument does not comport with the plain language of the Plans. Both Plans define disability, in relevant part, as "unable to perform the material and substantial duties" of the employee's "regular occupation" due to sickness or injury. (PRU 0033; PRU 0067.) Both Plans define "regular occupation" as the occupation the claimant is "routinely performing" at the onset of disability. (*Id.*) Finally, both Plans state that Defendant will consider a regular occupation "as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." (*Id.*) In light of these unambiguous provisions, Plaintiff's argument is untenable. Any variation in handling and fingering requirements for customer service representatives in different industries is not relevant to whether Plaintiff could perform the material and substantial duties of her regular occupation, as it is generally performed in the national economy. *See Goros v. Sun Life Assurance Co. of Canada*, No. 2:16-cv-233-FTM-38CM, 2017 WL 3705836, at *6 (M.D. Fla. Aug. 28, 2017) (relying on the policy language to evaluate occupational assessment based upon occupation as generally performed); *Garrett v. Prudential Ins. Co. of Am.*, 107 F. Supp. 3d 1255, 1270

(M.D. Fla. 2015) (same); *McGill v. Unum Life Ins. Co. of Am.*, No. 2:13-cv-00484, 2014 WL 2169329, at *9 (S.D. Ohio May 23, 2014) (same).

Third, Plaintiff argues that her job required continuous handling and fingering because she sat at a computer all day. (Dkt. 28 at 9–10.) In support, Plaintiff relies on the job description provided to Defendant during Plaintiff's appeal, noting that the particular job advertised required "regular" handling and fingering. (PRU 0884.) Plaintiff also points to the O*Net report, which provides that 27% of customer service representative positions require continuous or almost continuous repetitive motions. (Dkt. 28 at 9.)

These assertions similarly conflict with the plain language of the Plans. The particular requirements of the job reflected in the posting are not relevant to determining how the occupation of customer service representative is performed in the national economy. The Plans explicitly provide that Defendant will examine an employee's disability based on how the occupation is generally performed. (PRU 0033; PRU 0067.) Similarly, the fact that only 27% of customer service representative positions require continuous or almost continuous repetitive motions does not define the material and substantial duties of the job as it is performed in the national economy. Indeed, this statistic reflects that most of these positions do not require continuous or almost continuous repetitive motions. Plaintiff does not identify any evidence in the record to suggest that, *as performed in the national economy*, the occupation of customer service representative requires constant or continuous

handling and fingering.   Rather, based upon the evidence in the record, it was reasonable for Ms. Corrigan to conclude that the occupation of customer service representative requires only frequent handling and fingering.   As such, it was reasonable for Defendant to rely on Ms. Corrigan's conclusion that Plaintiff could perform these duties as required by her regular occupation, notwithstanding her limitations.  *Howard v. Hartford Life & Acc. Ins. Co.*, 929 F. Supp. 2d 1264, 1288 (M.D. Fla. 2013), *aff'd,* 563 F. App'x 658 (11th Cir. 2014) ("Even if the 'evidence is close,' an administrator does not abuse its discretion in resolving conflicting evidence.") (citing *Doyle v. Liberty Life Assur. Co. of Bos.*, 542 F.3d 1352, 1363 (11th Cir. 2008)).

Finally, Plaintiff contends that the record before Defendant was not properly developed or did not contain enough evidence to enable Defendant to make an informed decision about the physical requirements of Plaintiff's regular occupation. (Dkt. 28 at 10.)  This court's review is limited to the facts and evidence available to Defendant at the time of the denial decision.  *Ferreira*, 2019 WL 501363, at *9.  Plaintiff did not submit additional evidence for Defendant's consideration on this issue, despite the opportunity to do so.  (PRU 0812, 0890, 0901, 0910.)  Finally, it remains Plaintiff's burden to establish that Defendant's decision was unreasonable.  *See Garcon v. United Mut. of Omaha Ins. Co.*, 779 F. App'x 595, 599 (11th Cir. 2019) (noting that "[a] plaintiff suing under ERISA bears the burden of proving his entitlement to contractual benefits"); *Blankenship*, 644 F.3d at 1355.

**B. Conflict of interest**

In steps four through six of the sequential analysis, the court considers whether the plan administrator operated under a conflict of interest. *Blankenship*, 644 F.3d at 1355. Plaintiff continues to bear the burden to establish that Defendant's decision was arbitrary and capricious because it was tainted by a conflict of interest. *Id.*; *see Aebersold v. United of Omaha Life Ins. Co.*, No. 6:18-cv-61-ORL-40DCI, 2019 WL 403975, at *19 (M.D. Fla. Jan. 14, 2019), *report and recommendation adopted*, No. 6:18-cv-61-ORL-40DCI, 2019 WL 399547 (M.D. Fla. Jan. 31, 2019). As Plaintiff does not argue that Defendant operated under a conflict of interest or that Defendant's decision was affected by a conflict of interest, Plaintiff fails to carry her burden to establish the decision was arbitrary and capricious due to a conflict of interest.

## CONCLUSION

As Defendant had a reasonable basis in the record to conclude that Plaintiff could perform the material and substantial job duties of her regular occupation, notwithstanding her restrictions and limitations, Defendant's decision to deny Plaintiff's claims for benefits was not arbitrary and capricious. *Martinez*, 2022 WL 1314118, at *6.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Dkt. 28) be **DENIED**.

2. Defendant's Motion for Summary Judgment (Dkt. 26) be **GRANTED**.

3.  The Clerk be directed to enter judgment in favor of Defendant and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on June 8, 2022.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Kathryn Kimball Mizelle
Counsel of Record